UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| RUTH ANN KERNS,                )<br>                                                 )<br>    Plaintiff,                          )<br>                                                 )<br>         v.                                    )         Cause No. 2:20-CV-4-PPS<br>                                                 )<br>ANDREW SAUL,                     )<br>Commissioner of the Social Security )<br>Administration                       )<br>                                                 )<br>    Defendant.                       )  | |

## **OPINION AND ORDER**

Ruth Kerns appeals an administrative law judge's denial of her application for Social Security disability benefits. In doing so, she lists various alleged errors by the ALJ, including a two-sentence analysis at Step 3 of the process regarding Listing 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight bearing joint.) [DE 10 at 5-11.] After reviewing the record, I find that the ALJ's inadequate analysis regarding Listing 1.03 warrants a remand.

## Background

Ruth Kerns applied for disability insurance benefits in 2016, claiming that she was disabled as of April 18, 2015. [AR 15.][1] As of this alleged onset date, Kerns was 59 years old and had completed college. [AR 161.] Kerns had a long career in accounting prior to filing for disability. [AR 42.] On September 23, 2015, Kerns told her doctor she

---

[1] The Administrative Record (AR) in this case is found at Docket Entry #3. Citations reference the Bates stamp page number in the lower right-hand corner of the AR.

was experiencing pain in both knees and her doctors gave her injections to relieve the pain. [AR 466-68, 554, 582.] One doctor diagnosed her with a varus deformity (an excessive outward angulation) in both knees. [AR 738.] A follow-up x-ray showed severe arthrosis bilaterally and complete obliteration of the patellofemoral joint and medial compartment bilaterally. [AR 786.] Kerns went to physical therapy and eventually underwent left knee surgery. [AR 665, 764.] After rehabilitation and regular physical therapy, Kerns then underwent right knee surgery roughly three months later. [AR 687, 768, 1106, 1286.] After her second surgery, Kerns completed two weeks of rehabilitation and multiple visits for physical therapy. [AR 639-653.]

Since her first surgery, Kerns testified that she has progressed from using a walker to a cane, has difficulty walking longer distances, and needs assistance rising from a seated position. [AR 45-53.] With respect to daily activities, Kerns claims that she can perform light housework but requires a laundry service because she cannot walk the flight of stairs to the basement where her washer and dryer are. She also uses a grocery shopping service because she is unable to do the shopping herself. [AR 40, 54.] Kerns sought benefits claiming her disabilities included problems with her knees, osteoarthritis, thyroid condition with a goiter, and diabetes, and that she was disabled by back surgery.[2]  [AR 174.]

The ALJ denied Kerns disability benefits in a written opinion, [AR 15-26], and the

---

[2]  A more detailed account of Kerns's medical history is contained within the voluminous written record in this case. [*See* AR 258-2343.]

-2-

Appeals Council denied her appeal of that decision. [AR 1-6.] In his opinion, the ALJ engaged in the required five-step evaluation to determine whether Kerns was disabled. At Step 1, the ALJ considered whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). The ALJ determined Kerns had not engaged in substantial gainful activity since December 31, 2017. [AR 17.] At Step 2, the ALJ considered whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 404.1520(c). The ALJ determined that Kerns had several severe impairments, including: arthritis, cubital tunnel syndrome of the left arm, major joint dysfunctions of the hips and knees, obesity, and a spine disorder. [AR 17.] At Step 3, the ALJ considered whether the claimant's impairment or combination of impairments meets or medically equals one of the applicable Social Security listings. 20 C.F.R. § 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. The ALJ found that this combination of impairments did not meet or medically equal the severity contemplated by Listings 1.02, 1.03, 1.04, and considered obesity as an aggravating factor. [AR 18-20.]

The ALJ discussed Listings 1.02 and 1.04 at some length. But his discussion of the Listing 1.03 analysis was entirely perfunctory. Here's what he said:

> The claimant's impairments fail to meet the listing for 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). This requires that in addition to having undergone reconstructive surgery or surgical arthrodesis with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

-3-

[AR 19.]

The ALJ then determined Kerns's residual functional capacity and found that she was able to perform sedentary work with certain limitations: frequently reach with the non-dominant left upper extremity, frequently handle and finger with the non-dominant left hand, but occasionally climb stairs/ramps, balance, stoop, work in extreme cold, humidity, or wetness, and never climb ladders, ropes, scaffolds, kneel, crouch, crawl, work at unprotected heights or work around dangerous machinery with moving mechanical parts. [AR 20.] Particularly, he found that Kerns "required the use of a medically necessary cane when walking more than one hundred feet or when walking on uneven or ascending or descending surfaces." *Id.* The ALJ posed hypothetical and follow-up questions to a vocational expert who testified that a claimant with the limitations posed could work in her former job as an accountant. [AR 25, 60-62.] The ALJ therefore found Kerns was not disabled within the meaning of the Social Security Act. [AR 25.]

## Discussion

Whether or not Kerns is disabled is not for me to decide—that's the job of the Social Security Administration. My role in the process is to review the ALJ's ruling to determine whether it applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). The review is light because the Supreme Court has stated that the "substantial evidence" standard is a modest one; it is less than a preponderance of the

evidence standard. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the fact that, while the ALJ need not address every piece of evidence, he must build a "logical bridge" between the evidence and his findings and adequately discuss the issues so that I can evaluate the validity of the agency's findings. *Shideler*, 688 F.3d at 310. The claimant bears the burden of proving a disability and presenting medical evidence supporting her allegations. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); 20 C.F.R. § 416.912(a).

Kerns argues that the ALJ's analysis regarding Listing 1.03 is perfunctory and unsupported by substantial evidence. [DE 10 at 5-9.] Listing 1.03 provides: "Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."[3] To ambulate effectively:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to

---

[3] *Listing 1.03*, SSA, www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm#1_03 (last visited March 16, 2021).

-5-

walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.[4]

In reviewing the ALJ's decision, I note that while the ALJ went into detail regarding Listings 1.02 and 1.04, he only provided two short sentences regarding his analysis on Listing 1.03:

> The claimant's impairments fail to meet the listing for 1.03 (Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint). This requires that in addition to having undergone reconstructive surgery or surgical arthrodesis with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

[AR 19.] In sum, the ALJ set out the listing's requirements and then concluded that Kerns failed to meet the listing. But a conclusion is not a reason. The ALJ did not discuss any medical or non-medical records or Kerns's testimony. I agree with Kerns that "this is the very type of perfunctory analysis" that inadequately dismisses "an impairment as not meeting or equaling a Listing." *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015); [DE 10 at 7].

The Seventh Circuit has a long line of cases reversing ALJs for cursory and inadequate listing analysis. *Id.* (reversing an ALJ's perfunctory analysis because "[b]eyond these two sentences, she provided no analysis whatsoever supporting her conclusion."), *see also Kastner v. Astrue*, 697 F.3d 642 (7th Cir. 2012) (remanding an ALJ's cursory analysis and disability determination regarding the listing analysis); *Ribaudo v.*

---

[4] *Listing 1.00B(2)(b)(2)*, SSA, www.ssa.gov/disability/professionals/bluebook/1.00-Musculoskeletal-Adult.htm (last visited March 16, 2021).

*Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (remanding a two-sentence listing analysis and stating "[w]hat is troubling is that the ALJ . . . did not evaluate any of the evidence on its required criteria that is favorable to [the claimant]."); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003) (remanding an ALJ's two-sentence conclusory listing analysis as "devoid of any analysis that would enable meaningful judicial review.") In sum, an ALJ must explain the factors listed and provide support in the record through medical evidence. A "two-sentence consideration of the Listing of Impairments is inadequate and warrants remand." *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004).

What's more, not only was the ALJ's Step 3 analysis perfunctory, there was substantial evidence favorable to Kerns that the ALJ disregarded. For example, in June 2016, Kerns's physician, Dr. Rebecca Galante, noted Kerns experienced pain radiating down her left side to her toes and numbness between her knee and ankle, which had been ongoing since April 14, 2016. [AR 366-70.] Another doctor, Dr. Khanna, scheduled her for surgery, but Kerns needed to occasionally use a wheelchair to move around in the meantime. [AR 366.] On July 13, 2017, Kerns underwent left knee surgery [AR 764] and spent time recovering at Symphony of Dyer. [AR 1062, 1106.] She had difficulty walking and was scheduled to physical therapy upon discharge. [AR 1067, 1089.] On October 17, 2017, Kerns underwent right knee surgery [AR 768] and again, recovered at Symphony of Dyer. [AR 1108-17.] She required use of both a wheelchair and a walker. [AR 1117, 1468.] After surgery, she went to physical therapy regularly. [AR 633, 656, 658, 661.] On November 16, 2017, Kerns needed support during ambulation and used

an assistive device. [AR 606, 625.] On December 8, 2017, Kerns's therapist noted in the discharge notes that Kerns needed assistance to leave her home and her gait is unsteady. [AR 634.]

It is true that the ALJ made some references in his residual functional capacity analysis regarding her ability to ambulate. [AR 20-25.] But he also found that Kerns "required the use of a medically necessary cane when walking more than one hundred feet or when walking on uneven or ascending or descending surfaces." [AR 20-21, 25.] There is certainly evidence in the record that supports Kerns's claim that she was unable to effectively ambulate for over 12 months, which may rise to the level of supporting Listing 1.03. However, the ALJ failed to discuss ineffective ambulation at all or address any evidence during his Step 3 severity analysis.

In addition, the ALJ relied on the state agency consultants' opinions in his severity analysis. [AR 19.] However, Dr. Corcoran evaluated Kerns's records on December 28, 2016 [AR 73] and Dr. Eskonen evaluated the records on May 9, 2017 [AR 85], both of which were prior to Kerns's first knee surgery on July 13, 2017. [AR 764.] Therefore, the ALJ could not have effectively considered the state agency consultants' opinions for Listing 1.03 because the reconstructive surgery occurred *after* these evaluations and could not have encompassed the twelve-month ambulation requirement considered by the Listing. *Barnett*, 381 F.3d at 670 ("Moreover, as is evident from the perfunctory discussion of the listing, the ALJ never consulted a medical expert regarding whether the listing was equaled. Whether a claimant's impairment equals a

-8-

listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.").

Given the record of Kerns's limitations, the ALJ's cursory analysis regarding Listing 1.03 is inadequate. *Minnick*, 775 F.3d at 935-36. Here, the ALJ failed to properly analyze whether Kerns even had a reconstructive surgery disorder and consider the evidence favorable to her. While the Commissioner attempts to argue that Kerns has failed to prove an inability to ambulate after twelve months, "the Commissioner may not present an argument not raised by the ALJ himself." *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).

In sum, after a review of the record, I find that the ALJ erred in his two-sentence conclusory analysis of Listing 1.03 and failed to give Kerns a meaningful review and discuss the evidence used to support his decision. Because I am remanding this case for the reasons stated above, I need not discuss the remaining issues Kerns raises. She can raise those issues directly with the ALJ on remand.

There's one more matter to address: Kerns requests that this decision be reversed and that she be immediately awarded benefits. However, an outright reversal of the ALJ's decision is not appropriate, because an award of benefits "is appropriate only if all factual issues have been resolved," *Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005), and where "the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993). However, because there are still factual issues remaining in this case, it will be remanded for further analysis.

**Conclusion**

For the foregoing reasons, the decision of the ALJ denying Ruth Ann Kerns's application for Social Security disability benefits is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

**SO ORDERED on March 18, 2021.**

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
